GERON LEGAL ADVISORS LLC　　　　　　　　　　Hearing Date: April 22, 2025
Yann Geron　　　　　　　　　　　　　　　　　　Hearing Time: 10:00 a.m.
Nicole N. Santucci
Jeannette Litos
370 Lexington Avenue, Suite 1208
New York, New York 10017
(646) 560-3224
ygeron@geronlegaladvisors.com
nsantucci@geronlegaladvisors.com
jlitos@geronlegaladvisors.com

*Attorneys for Yann Geron, Chapter 7 Trustee*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------x
In re　　　　　　　　　　　　　　　　　:　　Chapter 7
　　　　　　　　　　　　　　　　　　　:
MERCURY CAPITAL ADVISORS GROUP　:　　Case No. 24-12326-DSJ
GP, LLC,　　　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　:
　　　　　　Debtor.　　　　　　　　　:
-------------------------------------------------------------x
In re　　　　　　　　　　　　　　　　　:　　Chapter 7
　　　　　　　　　　　　　　　　　　　:
MERCURY CAPITAL ADVISORS GROUP,　:　　Case No. 24-12327-DSJ
LP,　　　　　　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　:
　　　　　　Debtor.　　　　　　　　　:
-------------------------------------------------------------x
In re　　　　　　　　　　　　　　　　　:　　Chapter 7
　　　　　　　　　　　　　　　　　　　:
MERCURY CAPITAL ADVISORS, LLC,　　:　　Case No. 24-12328-DSJ
　　　　　　　　　　　　　　　　　　　:
　　　　　　Debtor.　　　　　　　　　:
-------------------------------------------------------------x

**TRUSTEE'S OBJECTION TO MOTION OF ALAN A. PARDEE FOR ORDER
MODIFYING AUTOMATIC STAY TO PERMIT CONTINUATION OF STATE
<u>COURT ACTION TO PURSUE INSURANCE PROCEEDS</u>**

　　Yann Geron, the chapter 7 trustee (the "<u>Trustee</u>") of the estate of Mercury Capital Advisors

Group GP, LLC ("MCA GP"), Mercury Capital Advisors Group, LP ("MCA LP"), and Mercury Capital Advisors, LLC ("MCA") (each a "Debtor" and collectively, the "Debtors"), the above-captioned debtors, by and through his attorneys, Geron Legal Advisors LLC, as and for his objection (the "Objection") to the motion of Alan A. Pardee (the "Movant"), pursuant to § 362 of title 11 of the U.S. Code (the "Bankruptcy Code"), seeking an order modifying the automatic stay to permit continuation of a state court action against the Debtors to pursue insurance proceeds (the "Motion") [DE 8 in MCA GP case, DE 10 in MCA LP case, and DE 10 in MCA case], respectfully sets forth and represents:

## Summary of the Objection

1. The Motion was brought at the very earliest stage of these chapter 7 cases. The Motion seeks to lift the automatic stay to proceed to trial on Movant's longstanding pre-petition state court action against the Debtors, thus allowing Movant to fix his claim and pursue insurance proceeds in satisfaction of all or part of such claim. As further detailed below, the Motion is premature. The Trustee was appointed only four short months ago and, although he has received extensive documents regarding the Debtors' pre-petition affairs to date, before he can be expected to participate meaningfully in the Action (as defined below), he will require significant time to assimilate the underlying facts, and assess the strength of what appear to be substantial and substantive counterclaims by the Debtors against the Movant which the estates would have to prosecute directly and at their own cost. The applicable insurance policies do not appear to cover all of the Debtors' defense costs and do not cover the prosecution costs of the Debtors' counterclaims. The funds in the estates currently appear to be fully encumbered by the alleged secured creditor, and while the Trustee anticipates being able to utilize these funds at some later point, at this juncture these funds are unavailable to pay costs associated with the Action. It would

2

be inefficient and unnecessary to require the Trustee to litigate the Action at this early stage in these cases and to drain estate resources to the detriment of all other creditors.

**Relevant Background**

a. The Bankruptcy Cases and Movant's Claim

2. On December 14, 2024 (the "Petition Date"), the Debtors each filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code [DE 1 in each case]. The Trustee was subsequently appointed interim chapter 7 trustee of the Debtors' estates, has he has since qualified as the permanent trustee and is currently serving in that capacity.

3. Prior to the Petition Date, MCA operated as a private equity broker-dealer advising clients on, and assisting clients in, raising private equity, credit, infrastructure and real estate funds from institutional investors globally, deploying expertise in raising capital for select companies, assets and portfolios of interests, and serving a secondary advisory role providing solutions to managers and owners of alternative asset portfolios seeking to leverage the secondary market to achieve their objectives.

4. According to the Motion, on February 1, 2021, Movant commenced an action in the Supreme Court of the State of New York County (the "State Court") entitled *Alan A. Pardee v. Mercury Capital Advisors Group GP, LLC, Mercury Capital Advisors, LLC and Mercury Capital Advisors Group, LP* (Index No. 650693/2021) seeking damages for breach of contract, race discrimination, and retaliation (the "Action"). The complaint initiating the Action was amended on June 22, 2021 (the "Amended Complaint"). Prior to the filing, the Debtors asserted four counterclaims (the "Counterclaims") to the Amended Complaint. Discovery in the Action is complete and, following unsuccessful court-ordered mediation, the Action is apparently ready to proceed to trial.

5. Upon information and belief, the Debtors have two applicable insurance policies to cover defense costs: an Employment Practices Liability insurance policy issued by Zurich Insurance Company, Policy No. EPL 0508351-02 (the "Zurich Policy"), and an Investment Advisers Management Liability co-insurance policy issued by XL Specialty Insurance Company, Policy No. ELU 172207-20 (the "XL Policy", and together with the Zurich Policy, the "Policies").

6. The Action seeks damages in an unliquidated amount and each of the Debtors' Schedule E/F reflects Mr. Pardee as holding a disputed, unliquidated, and contingent claim in an unknown amount.

b. The Status of the Bankruptcy Estates

7. These chapter 7 cases are still in the early stages of administration by the Trustee. The Trustee has received voluminous business records from various parties to date regarding the Debtors' pre-petition financial affairs and operations, including copies of the Policies. The Trustee is still working with the Debtors' former IT service provider to establish full access the Debtors' emails and other pertinent records. In connection with the Action specifically, particularly in light of the Counterclaims, the Trustee and his professionals will be required to review all documents exchanged in discovery.

8. The Trustee has also requested documents and information from, and regarding, Debtors' former Professional Employer Organization (the "PEO"), TriNet, Inc., that may be pertinent to the Action, including an explanation as to why the PEO is not a named defendant in the Action.

9. While a preliminary review of the Policies appears to confirm that the Policies cover the type of claims alleged in the Action, the Trustee has been informed that at least one of Movant's claims is not covered by the Policies, and thus, that a portion of the Debtor's defense

4

costs would need to be paid directly by the bankruptcy estates. Moreover, the cost of prosecuting the Counterclaims is also not covered by such Policies and would necessarily be shouldered by the estates.

10. The Trustee must also determine whether there are other claims against the Policies in addition to Movant's claims, and what portion of the Policies remain unpaid following their depletion by defense costs over the past four years in connection with the Action.

11. To date, the Trustee has collected approximately $440,000 in these estates which are alleged to be encumbered.

## The Trustee's Objection

12. To prevail on a motion to lift the automatic stay under section 362(d)(1), a movant must establish a *prima facie* case that there is cause to lift the stay. Neither section 362(d)(1) nor the legislative history defines what constitutes "cause" for relief from the automatic stay. See *In re Touloumis*, 170 B.R. 825, 828 (Bankr. S.D.N.Y. 1994). "'Cause' is an intentionally broad and flexible concept which must be determined on a case-by-case basis." *In re Celsius Network LLC*, 642 B.R. 497, 501–02 (Bankr. S.D.N.Y. 2022) (quoting *In re Brown*, 311 B.R. 409, 412–13 (E.D. Pa. 2004)) (internal citation omitted).

13. The decision whether to grant relief from the automatic stay for cause falls within the discretion of the bankruptcy court. See *Sonnax Industries, Inc. v. Tri Component Products Corp. (In re Sonnax Indus., Inc.)*, 907 F.2d 1280, 1286 (2d Cir. 1990); see also *Burger Boys, Inc. v. S. St. Seaport Ltd. P'ship (In re Burger Boys, Inc.)*, 183 B.R. 682, 687–88 (S.D.N.Y. 1994). To determine 'cause,' bankruptcy courts consider a list of twelve factors known as the *Sonnax* factors:

> "(1) whether relief would result in a partial or complete resolution of the issues; (2) lack of any connection with or interference with the bankruptcy case; (3) whether the other proceeding involves the debtor as a fiduciary; (4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action; (5) whether the

5

debtor's insurer has assumed full responsibility for defending it; (6) whether the action primarily involves third parties; (7) whether litigation in another forum would prejudice the interests of other creditors; (8) whether the judgement claim arising from the other action is subject to equitable subordination; (9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor; (10) the interests of judicial economy and the expeditious and economical resolution of litigation; (11) whether the parties are ready for trial in the other proceeding; and (12) impact of the stay on the parties and the balance of harms." *In re Sonnax Indus. Inc.*, 907 F.2d at 1286.

14. Consideration of each of the *Sonnax* factors is not required for a finding of cause to lift the automatic stay. Rather, "only those factors relevant to a particular case need be considered,…and the Court need not assign them equal weight." *In re Burger Boys, Inc.*, 183 B.R. at 688 citing *In re Touloumis*, 170 B.R. 825, 828 (Bankr. S.D.N.Y. 1994).

15. Movant argues that several of the *Sonnax* factors weigh in favor of granting him relief from the automatic stay for cause: (Factor #1) such relief would result in the completion of the Action and determination of the amount of Movant's claims; (Factor #2) such relief will not interfere with the bankruptcy cases since the insurance companies are defending the Action; (Factor #5) the Debtors' insurers have, in part, assumed liability to defend the Action; (Factor #7) such relief will not prejudice other creditors since the Policies are specific to the Movant's claims and Movant does not believe that there are any other similar claims; (Factor #10) the interests of judicial economy would be best served by determining the merits of the Action in the State Court; (Factor #11) the parties are ready for trial; and (Factor #12) the balance of harms weighs in favor of Movant.

16. In fact, the application of the *Sonnax* factors militates against granting Movant relief from the stay, particularly at this early stage in these cases. First, it is premature to allow the Action to proceed to trial. The Trustee is not the Debtors and does not have the Debtors' institutional knowledge. Nor does the Trustee have the Debtors' understanding of the evidence underlying the Action or the long history of the Action itself. The Trustee does not even have

privity with Debtors' counsel in the Action and does not currently have estate resources to retain such counsel.

17. Second, while Debtors' insurance carriers are purportedly defending the Action, they are not covering all defense costs[1]. The estates do not currently have any unencumbered funds to devote to the Action. The pursuit of the Action now would run the risk of the Trustee not being able to defend the uninsured claim and not being able to prosecute the Counterclaims to the detriment of all creditors of these estates.

18. Third, while the State Court may be a suitable forum for the Action, this Court is uniquely suited to fix the claims of creditors in bankruptcy in the context of the cases themselves. The fixing and paying of claims are core functions of the Trustee's estate administration with the direct oversight of this Court and notice to all creditors. The interests of judicial economy would best be served by proceeding with the Action in the Bankruptcy Court, provided there are funds available for distribution to creditors, including Movant.

19. Fourth, Movant may be ready for trial, but again, the Trustee is not the Debtors, and the Trustee is not ready for trial and does not have the resources to become ready for trial. While in the typical case the only issues involve claims against the insurance policy, in these cases, the issues involve Counterclaims which appear substantive and which, in any event, must be administered by the Trustee in due course.

20. Fifth, under the *Sonnax* factors, the balance of harms weighs strongly in favor of the Trustee and against Movant. Movant's claims have been pending for more than four years, and there clearly is no urgency to the administration of Movant's case in State Court at this early

---

[1] Specifically, as discussed above, the insurance carriers dispute coverage for at least one cause of action in the Amended Complaint and have not been covering the cost to litigate the Counterclaims. These costs were all borne by the Debtors pre-petition.

stage in these bankruptcy cases. Movant will not be harmed by a further delay. Whether Movant will recover anything from the Policies will depend on the resolution of the Counterclaims, and that will take time. Whether Movant receives any distribution from these estates as, and when, Movant's claim is fixed will depend on the Trustee's ability to collect unencumbered funds for the benefit of creditors and on the resolution of all claims, not just Movant's claim. Movant will suffer no harm from a long delay, whereas these estates and their creditors stand to suffer significant harm from the forced prosecution of the Action at this time.

21. Finally, the Policies constitute property of the estates. The Trustee has a duty to preserve these resources for the benefit of the Debtors' estates to the extent the Policies may be used to cover or defray costs of any other claims in addition to the costs of defending against the Action.

22. In an effort to avoid this motion practice, the Trustee and his counsel met and conferred with Movant's counsel prior to and following the service of the Motion to advise them of the Trustee's position and request a delay of the Motion. While the Movant initially postponed the hearing on the Motion, he advised the Trustee that he wishes to proceed with his Motion now. To date, the parties have been unsuccessful in reaching a consensual resolution of the underlying issues.

**WHEREFORE**, for the reasons set forth above, the Trustee respectfully requests that this Court deny the Motion.

| | |
|---|---|
| Dated: New York, New York<br>April 15, 2025 | GERON LEGAL ADVISORS LLC<br>*Attorneys for Yann Geron, Chapter 7 Trustee*<br><br>By: */s/ Yann Geron* |

Yann Geron
Nicole N. Santucci
Jeannette Litos
370 Lexington Avenue, Suite 1208
New York, New York 10017
(646) 560-3224
ygeron@geronlegaladvisors.com
nsantucci@geronlegaladvisors.com
jlitos@geronlegaladvisors.com